UNITED STATES

v.

Gary RUOHONEN.

UNITED STATES

v.

James FLYNN.

UNITED STATES

v.

Emile C. DESPRES.

UNITED STATES

v.

Gerald Leo FARRENDEN.

UNITED STATES

v.

Alfred RICCI, Sr.

UNITED STATES

v.

David A. WHYNOTT.

Crim. Nos. 72-24-W, 72-34-W, 72-50-W, 72-79-W, 72-108-W and 72-134-W.

United States District Court,
D. Massachusetts.

April 13, 1972.

**1252**

Joseph L. Tauro, U. S. Atty., William A. Brown Asst. U. S. Atty., for the United States.

John E. Keenan, Jr., Hartwell, Driscoll, Reardon & Keenan, Worcester, Mass., for defendant Gary Ruohonen.

### ORDER

WYZANSKI, District Judge.

I am not aware that any appropriate appeal has ever been taken from my April 6 and April 12, 1972 orders in these six criminal cases. Nor did I, nor, so far as I know, did counsel, have notice of the proposed action of the Judicial Council of the First Circuit, taken April 12, 1972, nor so far as I am aware, has the Circuit Council any authority to issue the order it did, since it has the obvious purpose of interfering with the constitutional independence of a judge who had scheduled a hearing to consider the constitutionality of action by the very tribunal which purports to enjoin him, and since it avoids the perplexing questions raised in, but unresolved by, the opinions of The Supreme Court of The United States in Chandler, U.S. District Judge v. Judicial Council of Tenth Circuit, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970).

I decline to speculate as to motivation. I have no window into another man's soul.

Counsel are advised, however, that I shall not take any action before June 1, 1972, inasmuch as (as the Circuit Council was already informed) I plan to sit in May as a judge of the Court of Appeals of the District of Columbia, pursuant to the orders of those authorized by The Chief Justice of the United States and by the statutes and rules governing federal judges.

### ORDER OF THE CIRCUIT COUNCIL RE MASSACHUSETTS JURY PLAN

#### April 12, 1972

In accordance with the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1874, the District Court for the District of Massachusetts developed, and we approved a plan for the selection of federal juries in said district. After a period of time during which criminal prosecutions were held in abeyance, new lists of jurors based, as the above Act permits, on Massachusetts voting lists were prepared in accordance with said plan and names therefrom inserted into the master jury wheel. The plan survived at least one broad constitutional challenge before the district court in United States v. Arnett, D.Mass., Cr. No. 70–284, November 10, 1970. The Court of Appeals has had no occasion to confront such a challenge.

Very recently a motion to dismiss an indictment was allowed on the basis of the court's conclusion that recourse to Massachusetts voting lists had the effect of excluding paupers from jury service. United States v. Raymond Isaac Andrews, D.Mass., Cr. No. 72–74, April 3, 1972. The appeal in that case will be heard by the Court of Appeals. Were this all, we, the judges of the Court of Appeals convening as the Judicial Council of this Circuit would have no occasion to exercise our supervisory powers.

Subsequently the district judge who had presided in the *Andrews* case, foreseeing the possibility of other challenges to the district's jury plan, raising far broader questions, issued orders in an effort to systematize presentation of evidence of operations of the jury selection plan and argument based thereon, inviting attention to certain data and certain

issues. The parties in six criminal cases, an amicus, and those charged with the responsibility of conducting federal prosecution in Massachusetts and in the nation have been invited to participate.

As the body ultimately charged with approval of any jury plan we see the nature of the challenges in prospect not solely as relevant to a discrete number of cases but as impinging fundamentally on the institutional effectiveness of the district court and its jury system. The challenge being systemic and very possibly such as to cause another moratorium on federal prosecutions, we deem it essential, both for parties presently under indictment and for those who may be subject to future prosecution, that there be the most authoritative and expeditious examination of the present operations of the district's jury plan—to the ends that any legally adequate defenses may be made available to all defendants similarly situated and, equally important, that any needed corrective action may be speedily taken.

We therefore see the inquiry and the resolution to be, in the first instance, properly the function of the district court as the institution with the responsibility for devising and keeping viable its jury selection plan. We accordingly direct and authorize the Chief Judge of that court to convene a panel composed of several of its *active* judges, perhaps limited to a total of three, including himself, to plan and launch an immediate inquiry into the operations of the jury selection system in such manner and to such extent as the court shall determine. The inquiry would seek to ascertain whether or not any significant section of the community is being by law or in fact unconstitutionally discriminated against in jury service and whether the plan creates or results in other unconstitutional vice. The court may wish to enlist the services of a United States Magistrate or possibly to appoint a special master for the purposes of receiving evidence and performing such other functions as are directed by the panel. It may, but need not, obtain the services of a consultant with experience in jury selection systems. The panel should endeavor to conclude its work, publish its findings, and submit any recommendations to us as soon as possible, giving priority to this undertaking. In the meantime, we direct that any other court action in anticipation of or in response to any motion to dismiss an indictment on the ground of a constitutional or statutory challenge to the selection of a grand jury be withheld. While the findings of the court's panel could not be dispositive of individual cases, they might constitute relevant evidence, and in any event would provide guidance both for prosecutors and defense counsel in cases not yet tried, and to guide us with respect to possible amendments of the plan. This order is without prejudice to defendants who wish to try their case in other respects.

## ORDER

WYZANSKI, District Judge.

In connection with the motions to be argued June 1, 1972, the court invites the parties to prepare and submit *before* the arguments (a) stipulations, (b) statements of what the court may from census or comparable other sources take judicial notice, (c) depositions and, above all, (d) briefs addressed to the following points:

1. what in 1968, 1970, 1972 have been the percentages of the *resident* (not necessarily for more than 3 months) citizens (not necessarily voters) who were (a) black, (b) Spanish surnamed, (c) of Chinese or other Oriental origin or descent, (d) between 18 and 21 years of age, (e) between 21 and 25 years of age, (f) between 25 and 30 years of age, and (g) between 40 and 70 years of age.

2. what in 1968, 1969, 1970, 1971 and so far in 1972 has been the percentage of those called for (1) grand jury duty and (2) petit jury duty in the District of Massachusetts who have been (a) black, (b) Spanish surnamed, (c) of Chinese or other Oriental origin or descent, (d) between 18 and 21 years of age, (e) between 21 and 25 years of age, (f) between 25 and 30 years of age, and (g) between 40 and 70 years of age.

3. in 1968, 1969, 1970, 1971, and so far in 1972, what has been the percentage of those called for (1) grand jury duty and (2) petit jury duty who have been either (a) educated beyond high school or (b) engaged in occupations in which the national median average annual income is presumably above $15,000. (The lists of the highly educated and the relatively affluent should be prepared separately, and the occupations regarded as having an above $15,000 income should be named). Women should be classified separately.

4. in 1968, 1969, 1970, 1971, and so far in 1972, what has been the percentage of (a) all those called for (1) grand jury duty and (2) petit jury duty who have been excused, (b) of those educated beyond high school who have been excused, and (c) of those in occupations with average annual incomes above $15,000 who have been excused. Women should be classified separately.

With respect to the data assembled the briefs are invited to consider whether a person charged with crime has a constitutional right to a grand jury and to a petit jury which is drawn from approximately a cross-section of the community, and from which there have not been (a) omitted an untypically large proportion of blacks, Orientals, and young persons whose absence, due to their indifference to registering as voters or barriers precluding their registration as voters, has distorted the representative nature of the pool from which jurors are drawn, or (b) excused an untypically large proportion of highly educated or affluent persons.

The court draws attention to other matters, such as (a) the likelihood that a voter list which is perpetual and does not require annual re-registration will favor the elderly and thus present a distorted source for a supposed cross-section of the community, (b) the effect upon, for example, blacks, Orientals, and Spanish surnamed persons of drawing jurors not upon a state-wide or very large territorial base but upon a narrow geographical area, as commanded by the Jurors' Selection Act (in connection with

this point relevant data as to the geographical distribution of various ethnic or like minorities should be submitted in the form of depositions, statements as to judicial notice, and stipulations), and (c) the effect upon women of the policies and practices under the Act and Plan.

The court invites an analysis of relevant precedents in the Supreme Court (such as Alexander v. Louisiana, 405 U. S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 April 3, 1972) and other courts both before and after the effective date of the Act, as well as of the history of the drafting of the Act by the Committee appointed by the Judicial Conference and of the legislative history.

## MEMORANDUM AND ORDER

### WYZANSKI, District Judge.

In the light of the issues stirred by United States v. Raymond Isaac Andrews, Criminal No. 72–74–W, this court will hear on Thursday, June 1, 1972, any motions filed in the above-entitled cases which seek the dismissal of an indictment on the ground that it was returned by a grand jury which failed to meet the standards prescribed by Article III of the United States Constitution and Amendment V and Amendment VI to that Constitution, in that the grand jury was selected pursuant to the Plan adopted in the United States District Court for the District of Massachusetts, with the approval of the Judicial Council of the First Circuit, and in accordance with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., and that as revealed by the venires summoned in the District of Massachusetts since 1968, the aforesaid Act, as well as the Plan, deny the defendants' Constitutional rights because:

(1) Citizens less than 25 years of age and, more particularly, citizens under 21 years of age, either do not register as voters or are not allowed to register as voters;

(2) Citizens who are from the more affluent and educated classes and who hold the more important positions in the world of affairs are

so frequently excused as to indicate a policy hostile to the purposes of the Act;

(3) Persons of Oriental, African, Latin American, and other ethnic minorities, are obviously under-represented in the venires;

(4) Women are under-represented in the venires; and

(5) The high proportion of the population of Massachusetts which is resident, but alien, has no opportunity for jury service.

In view of the nature of the motions, the clerk of this court is directed, no later than May 15, 1972, to prepare for general inspection an affidavit fully revealing the operations of the jury selection plan and amendments thereto in this district since 1968. In particular, the clerk is directed to attach to his affidavit all venires and all jury lists which will disclose the background by occupation and otherwise of those actually called for jury duty. Other information, particularly with respect to the age of the jurors and their ethnic background insofar as it is revealed by records in the clerk's office, shall be referred to in the affidavit.

Because the motions will presumably be directed at the possible unconstitutionality of an Act of Congress as here applied, notice of this order shall be given forthwith to the Attorney General of the United States, the Solicitor General of the United States, the United States Attorney for the District of Massachusetts, and of course to all counsel in the above-listed cases now pending before me. Opportunity to appear as amicus curiae shall be rigidly limited to those who have additional points of significance to make, but in view of his participation and extraordinarily excellent performance in United States v. Raymond Isaac Andrews, Verne W. Vance, Jr., Esq. of Foley, Hoag & Eliot is specifically invited to submit a brief amicus curiae,—he having most effectively stirred the issues here involved and his client being affected thereby.